UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LARRY ZAMARANO,  )  No. ED CV 09-2207 PJW
                 )
     Plaintiff,  )
                 )
     v.          )  MEMORANDUM OPINION AND ORDER
                 )
MICHAEL J. ASTRUE, )
Commissioner of the )
Social Security Administration, )
                 )
     Defendant.  )

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits. He claims that the Administrative Law Judge ("ALJ") erred when he failed to: (1) take into account a treating physician's opinion that Plaintiff's medication caused side effects; and (2) obtain vocational expert testimony to determine if Plaintiff could work. (Joint Stip. at 2-8, 11-15.) Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence, it is affirmed.

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff applied for SSI on January 31, 2008, alleging that he had been unable to work since June 1, 2007, because of rheumatoid arthritis and gastroesophageal reflux disease. (AR 88, 92.) The Agency denied his application initially and on reconsideration. (AR 37-49.) He then requested and was granted a hearing before an ALJ. (AR 52-53.) Plaintiff appeared with counsel and testified at the hearing on June 10, 2009. (AR 18-36.) On September 1, 2009, the ALJ issued a decision denying benefits. (AR 6-17.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-5.) He then commenced the instant action.

III.

ANALYSIS

A. <u>Side Effects</u>

In his first claim of error, Plaintiff contends that the ALJ erred when he failed to consider an April 2009 chart note by treating physician Robert Schmitt that Plaintiff's pain medication caused side effects. (Joint Stip. at 3-7.) Plaintiff contends that this chart note constituted the doctor's opinion and, therefore, the ALJ was required to set forth specific and legitimate reasons for rejecting it, which he failed to do. (Joint Stip. at 3-4.) Alternatively, Plaintiff argues that the ALJ was required to contact Dr. Schmitt and have him explain what he meant by side effects in the chart note. (Joint Stip. at 6-7.) For the following reasons, the Court rejects these arguments.

Although the side effects of medication must be considered by an ALJ in determining disability, 20 C.F.R. § 416.929(c)(3)(iv); *see also*

Social Security Ruling 96-8p, the claimant bears the burden of presenting objective evidence establishing that the side effects are impacting his ability to work. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (holding claimant bears burden of presenting clinical evidence that narcotics use impaired ability to work). Plaintiff has failed to meet his burden.

Plaintiff submitted a disability report with his application for SSI in 2008 in which he stated that Flomax, a prostate medication he was taking, caused a runny nose. (AR 127.) After his application for benefits was initially denied by the Agency, Plaintiff submitted a new report, stating that Flomax made him dizzy.[1] (AR 117.)

A progress note from November 2007 states that Plaintiff experienced side effects "with hytrin.," presumably Hydrocodone-Acetaminophen, but it does not specify what those side effects were. (AR 138, 141.) Plaintiff did not report any side effects to the consultative examiner, Dr. William Boeck, in May 2008. (AR 150-54.)

In March 2009, Plaintiff reported to his treating physician, Dr. Schmitt, that there were no "adverse effects" from his medications. (AR 179.) Six weeks later, on April 27, 2009, Plaintiff reported to Dr. Schmitt that he was experiencing side effects from his pain medications, though the doctor did not note what the side effects were. (AR 173.) Perhaps in response to this complaint, Dr. Schmitt changed Plaintiff's pain medication from Endocet to Tramadol. (AR

---

[1] Plaintiff also asserted in both reports that Vicodin, a pain reliever he was taking, gave him a rash, slight nausea, and a dry mouth. (AR 117, 127.) Obviously, these claimed side effects have no impact on Plaintiff's ability to work, nor has he argued that they do.

3

175.)  The April 2009 note is the last note from Dr. Schmitt in the medical record.

Six weeks later, in June 2009, Plaintiff testified at the administrative hearing that he had taken Tramadol, Hydrocodone, and Oxycodone in the past and that he was currently taking Vicodin, Norco, Flomax, and Prilosec.  (AR 26-28.)  He did not claim to be experiencing any side effects from these medications or claim that side effects impaired his ability to work.  (AR 24-35.)  When specifically asked what symptoms, other than pain and lethargy, prevented him from working, Plaintiff testified that it was gastroesophogeal reflux.  (AR 29.)

Plaintiff now claims that the ALJ erred when he did not adopt Dr. Schmitt's "opinion" that Plaintiff's side effects interfered with his ability to work.  The record simply does not support Plaintiff's argument.  The record of side effects is scant, at best.  In 61 pages of medical records, side effects are mentioned three times: once in November 2007, when Plaintiff reported unspecified side effects; once in March 2009, when Plaintiff reported no side effects; and once six weeks later, in April 2009, when Plaintiff again reported unspecified side effects.  (AR 173, 179.)  To characterize these entries as doctors' opinions is simply misguided.  Further, even if they were, they were grounded in Plaintiff's subjective claims, which the ALJ found were not credible.  Thus, the ALJ was not required to credit Plaintiff's claimed side effects.  *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (affirming ALJ's rejection of claimant's alleged side effects because claimant was not credible and the only evidence of side effects was her statements that they existed).  For these reasons, the ALJ's failure to treat these cryptic entries as a

treating physician's opinion was not error. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding ALJ did not err in excluding alleged side effects from hypothetical question where the record contained only "passing mentions of the side effects of [claimant's] medication . . . but there was no evidence of side effects severe enough to interfere with [claimant's] ability to work").

Nor was the ALJ required to contact Dr. Schmitt for clarification. Though an ALJ has a duty to contact a treating doctor where the doctor's opinion is unclear, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (noting ALJ has duty to fully develop the record when evidence is ambiguous or inadequate such as to prevent proper evaluation of claim); *see also* 20 C.F.R. § 416.912(e), the entries in Dr. Schmitt's records did not rise to that level. Nothing in Dr. Schmitt's chart notes suggests that the claimed side effects were debilitating or that they would interfere with Plaintiff's ability to work. In fact, a fair reading of Dr. Schmitt's notes and the other medical records establish that side effects were a non-issue. Further, given a chance at the administrative hearing to make the case as to why he could not work, Plaintiff never mentioned side effects, despite multiple opportunities to do so. In failing to mention them, Plaintiff (and his lawyer) signaled to the ALJ (and this Court) that side effects were not in issue. For these reasons, the ALJ was not required to contact Dr. Schmitt for clarification and did not err when he failed to do so. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff, of course, disagrees. Citing *WebMD*, an internet medical site, he argues that Flomax and Tramadol *can* produce a whole

host of side effects, including vomiting, constipation, dizziness, weakness, drowsiness, headaches, restlessness, blurred vision, fever, runny noses, and problems ejaculating, which could significantly affect his ability to work. (Joint Stip. at 5, citing http://www.webmd.com.) Whether or not these medications can, and in some cases do, cause these side effects is irrelevant. The issue before the ALJ and the Court is whether they caused these side effects in Plaintiff and, if so, whether they impacted Plaintiff's ability to work. The answer to both questions is no. Plaintiff never claimed to suffer from most of the listed side effects and never claimed that the ones he did suffer from impacted his ability to work. (AR 29.) In fact, in his entire testimony at the administrative hearing, which covers 17 pages of transcript, he never once mentioned any side effects, never mind that they prevented him from working. (AR 20-36.) For all these reasons, the Court concludes that the ALJ did not err in failing to address Plaintiff's claimed side effects and, therefore, this claim is denied.

B. <u>The ALJ's Application of the Medical-Vocational Guidelines</u>

In his second claim of error, Plaintiff contends that the ALJ erred when he relied on the Medical-Vocational Guidelines (hereinafter the "Grids") to determine that Plaintiff could work. (Joint Stip. at 11-15.) For the following reasons, the Court concludes that the ALJ did not err.

The Grids are a set of rules that direct whether a claimant is or is not disabled. An ALJ is authorized to rely on the Grids if they "*completely and accurately* represent a claimant's limitations . . . . In other words, a claimant must be able to perform the *full range* of jobs in a given category". *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th

Cir. 1999) (emphasis in original).  Conversely, the Grids may not be used if a claimant has a severe, non-exertional impairment that would significantly limit the range of work he could perform.  *See*, *e.g.*, *Thomas*, 278 F.3d at 960 (holding vocational expert must be consulted when the Grids do not "adequately take into account claimant's abilities and limitations").

Here, the ALJ determined that Plaintiff could perform medium work as long as it involved no more than occasional climbing.  (AR 12.)  He then applied Grid Rule 203.06 and concluded that Plaintiff was not disabled.  (AR 16-17.)  Plaintiff argues that the ALJ should not have relied on the Grids because Plaintiff suffered from significant, non-exertional limitations--such as side effects from his medications and pain.  He contends that the ALJ should have, instead, relied on a vocational expert.  (Joint Stip. at 12-15, citing *Aukland v. Massanari*, 257 F.3d 1033 (9th Cir. 2001).)  For the following reasons, the Court disagrees.

As explained in detail in Section A above, not even Plaintiff believed that his alleged side effects interfered with his ability to work.  As to his claim of significant pain, the ALJ expressly found in his adverse credibility finding and in his reliance on the uncontroverted opinions of the examining and reviewing physicians that Plaintiff's non-exertional limitations were not significant.  (AR 7-8.)  That finding is supported by substantial evidence in the record.  Where, as here, there are no non-exertional limitations that significantly impact a claimant's ability to work, the ALJ is free to use the Grids.  *Osenbrock*, 240 F.3d at 1162.  For these reasons, this claim does not warrant reversal or remand.

IV.

CONCLUSION

For the reasons set forth above, the Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error. The decision of the Agency is, therefore, affirmed.

IT IS SO ORDERED.

Dated: May 20, 2011

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ZAMORANO, L 2207\MemoOpinion.wpd